UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ROSEANNE DIMENCO, TYRONE DICKENS, RICHARD MARLOWE, JUAN ANTONIO MOLINA, NICHOLAS PALAFOX, TONI RANGEL, STARLA ROLLINS, MYKELE SAUNDERS, and MARTHA VAZQUEZ, | Case No:  C 10-03112 SBA |
| | **ORDER GRANTING DEFENDANTS' MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL** |
| Plaintiffs, | |
| vs. | Dkt. 8, 15 |
| SERVICE EMPLOYEES INTERNATIONAL UNION, DAVID REGAN, and ELISEO MEDINA, | |
| Defendants. | |

Plaintiffs Roseanne Dimenco, Tyrone Dickens, Richard Marlowe, Juan Antonio Molina, Nicholas Palafox, Toni Rangel, Starla Rollins, Mykele Saunders and Martha Vazquez (collectively "Plaintiffs") are members of the SEIU United Healthcare Workers-West ("UHW"), a local union that is part of the Service Employees International Union ("SEIU").  In 2009, the SEIU imposed a trusteeship and took control of the UHW due to mismanagement by UHW leaders.  Pursuant to Title III of the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 464, Plaintiffs, who are represented by the law firm of Siegel & Yee, filed the instant action to terminate the trusteeship imposed by the SEIU.  The parties are presently before the Court on Defendants' Motion to Disqualify Plaintiffs' Counsel.  Dkt. 8.  Having read and considered

the papers filed in connection with this matter, and being fully informed, the Court hereby GRANTS the motion for the reasons set forth below.  The Court, in its discretion, finds this matter suitable for resolution without oral argument.  See Fed.R.Civ.P. 78(b); Civ. L.R. 7-1(b).

# I.   BACKGROUND

## A.   FACTUAL SUMMARY

### 1.   Imposition of a Trusteeship over the UHW

The SEIU is a labor organization representing approximately 2.2 million workers nationwide.  Fitzpatrick Decl. ¶ 2, Dkt. 14.  The UHW is a local union affiliate of the SEIU representing nearly 150,000 healthcare workers in California.  Id.  Under the SEIU Constitution and Bylaws, the SEIU International President may impose a trusteeship over a local union "for the purpose of correcting corruption or financial malpractice," among other reasons.  Id., Ex. A at Art. VIII, §§ 7(a), (f).  In accordance with that provision, on August 25, 2008, the SEIU issued a notice that it would conduct a hearing to determine whether the UHW should be placed in trusteeship due to mismanagement of its affairs.  Id. ¶ 3.

On January 21, 2009, former United States Secretary of Labor Ray Marshall, who was appointed by the SEIU's International President to serve as the hearing officer, issued a 105-page report and recommendation in which he recommended that a trustee should be appointed to take over the affairs of the UHW.  Id. Ex. B.  On January 27, 2009, the SEIU appointed David Regan and Eliseo Medina as Trustees to oversee the UHW "for the purposes of correcting financial malpractice and restoring democratic procedures as well as safeguarding collective bargaining relationships and carrying out the other legitimate objects of the SEIU."  Id. Ex. C. at 1.

### 2.   Creation of the NUHW

Immediately after the establishment of the trusteeship, former UHW President Sal Rosselli resigned; he, along with other former leaders of the UHW, then created a rival union known as the National Union of Healthcare Workers ("NUHW").  Id. ¶ 11.  Thereafter, the NUWH actively began efforts to become the collective bargaining

representative in place of the UHW.  Specifically, in February 26, 2009, NUHW submitted four petitions to the National Labor Relations Board ("NLRB") seeking to have UHW decertified and to have the NUHW appointed as the bargaining representative for approximately 43,000 Kaiser Permanent employees in California.  Rothner Decl. ¶ 3, Dkt. 12.  On April 7, 2009, the NLRB rejected the petitions on the ground that they were filed during a period barred by a collective bargaining agreement.  Id. ¶ 4, Ex. A.  However, in June 2010, the NUWH again filed NLRB petitions seeking to displace UHW in its representation of Kaiser employees.  Id. ¶ 5.  In those proceedings, attorney Dan Siegel of Siegel & Yee served as legal counsel for the NUHW.  Id. ¶ 6.[1]

### 3.      The SEIU/UHW File Suit Against the NUHW

After the SEIU took control of the UHW, Trustees Regan and Medina and SEIU representatives attempted to enter the UHW's offices, but were denied access.  Id. ¶ 7. Finally, on January 30 and 31, 2009, they were able to enter the offices, which they found to be in a state of disarray.  Id. ¶ 9.  Bags of shredded documents were found piled against dumpsters located outside of the UHW's offices.  Id.  The SEIU and UHW conducted an investigation and concluded that former UHW leadership had engaged in a purposeful scheme to render UHW ungovernable in the event of a trusteeship, created a rival union while still serving in leadership positions and misappropriated UHW resources for the benefit of NUHW.  Id. ¶ 12.

In the meantime, on January 28, 2009, the SEIU and UHW filed suit in this Court against the NUHW and former UHW leaders, including Rosselli, based on their obstruction of the trusteeship.  See Serv. Employees Int'l Union, et al. v. Sal Rosselli, et al., No. C 09-00404 WHA ("the Rosselli action").  The case was assigned to the Honorable William Alsup and was tried to a jury.  On April 9, 2009, the jury rendered a $1.58 million verdict

---

[1] In addition, since January 27, 2009, the date the trusteeship was imposed, the NUHW has filed or attempted to file seventy-five representation petitions with the NLRB and other California public agencies seeking to establish the NUWH as the representative for approximately 125,000 UHW members.  Id. ¶ 4.  At the time the trusteeship was formed, the UHW's total membership was around 150,000.  Id.

against the NUHW and sixteen former leaders and staff of the UHW.  Id. Dkt. 623.  In

addition, Judge Alsup found each of the former leaders had breached their fiduciary duty

under the SEIU Constitution by failing to return UHW property when the trusteeship was

imposed and issued a permanent injunction accordingly.  Id. Dkt. 627, 691.  Attorney Dan

Siegel and his firm, Siegel & Yee, represented the defendants in the district court and

continue to represent them in the trial court proceedings and on appeal.   Fitzpatrick Decl.

¶ 13.

### B.   PROCEDURAL HISTORY

On July 16, 2010, Plaintiffs, all of whom are members of the UHW, filed a

Complaint in this Court seeking to discontinue the SEIU trusteeship over UHW.  Compl.

¶ 4, Dkt. 1.[2]  Plaintiffs are represented by Dan Siegel and Siegel & Yee.  Defendants SEIU

and Trustees Regan and Medina now move to disqualify Siegel & Yee from serving as

counsel for Plaintiffs on the ground that the firm is concurrently representing the NUHW in

the Rosselli action and NLRB proceedings, and that such representation is adverse to the

UHW.  For their part, Plaintiffs devote the bulk of their opposition to the argument that

Defendants lack standing to bring a motion for disqualification.  In addition, they briefly

contend that the Siegel & Yee firm is not representing adverse interests, as Plaintiffs and

the NUHW's interests allegedly are aligned.  The matter has been fully briefed and is ripe

for decision.[3]

## II.   LEGAL STANDARD

A district court has the discretion to disqualify counsel as part of its "prime

responsibility for controlling the conduct of lawyers practicing before it[.]"  In re

Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig., 658 F.2d 1355, 1358

---

[2] On July 28, 2010, the case was reassigned to this Court.  Dkt. 7.  Judge Alsup declined to relate this case to the Rosselli action.  Dkt. 18.

[3] Through their counsel, Siegel & Yee, Plaintiffs separately filed a motion for preliminary injunction in which they seek the immediate termination of the trusteeship. Dkt. 15.  Since Siegel & Yee is being disqualified from representing Plaintiffs in this action, the Court declines to consider the motion at this juncture.  Once Plaintiffs retain replacement counsel, said counsel may consider whether to renotice said motion.

(9th Cir. 1981); Gas-A-Tron of Ariz. v. Union Oil Co. of Calif., 534 F.2d 1322, 1325 (9th Cir. 1976) (noting that a trial court's authority to disqualify an attorney derives from the power inherent in every court to control the conduct of its ministerial officers, in the furtherance of justice). The ethical rules of the forum state—in this case, California—govern the Court's disqualification analysis. In re County of Los Angeles, 223 F.3d 990, 995 (9th Cir. 2000) (attorneys must "comply with the standards of professional conduct required of the members of the State Bar of California.").

"Motions to disqualify counsel are strongly disfavored." Visa U.S.A., Inc. v. First Data Corp., 241 F. Supp. 2d 1100, 1104 (N.D. Cal. 2003) (Hamilton, J.). Because a motion to disqualify is often tactically motivated and can be disruptive to the litigation process, requests for disqualification are subject to "particularly strict judicial scrutiny." Optyl Eyewear Fashion Int'l Corp. v. Style Cos., 760 F.2d 1045, 1050 (9th Cir. 1985) (internal quotations omitted). The party seeking disqualification bears a "heavy burden." City and County of San Francisco v. Cobra Solutions, Inc., 38 Cal.4th 839, 851 (2006). In considering a disqualification motion, the district court is obligated to make "a reasoned judgment," Gregori v. Bank of Am., 207 Cal.App.3d 291, 300 (1989), and may resolve disputed factual issues and must make findings supported by substantial evidence, Dept. of Corps. v. SpeeDee Oil Change Syst., 20 Cal.4th 1135, 1143 (1999).

## III. DISCUSSION

### A. STANDING

A disqualification order may be predicated upon the existence of a conflict of interest. In re County of Los Angeles, 223 F.3d at 995. "A conflict of interest may arise from an attorney's concurrent or successive representation of clients with adverse interests." People v. Baylis, 139 Cal.App.4th 1054, 1064 (2006) (citing Flatt v. Super. Ct., 9 Cal.4th 275, 283-84 (1994). In a simultaneous representation case, "[t]he primary value at stake ... is the attorney's duty—and the client's legitimate expectation—of loyalty, rather than confidentiality." Flatt, 9 Cal.4th at 284. In a successive representation case, "the chief fiduciary value jeopardized is that of client confidentiality." Id. at 283.

1   Plaintiffs contend that Defendants lack standing to bring the instant motion for

2   disqualification on the ground that they are not "former clients, present clients or

3   prospective clients" of Siegel & Yee, and otherwise lack any "personal stake sufficient to

4   satisfy the standing requirement."  Pls.' Opp'n at 3-4.  As a general matter, the "majority

5   view is that only a current or former client of an attorney has standing to complain of that

6   attorney's representation of interests adverse to that current or former client."  Colyer v.

7   Smith, 50 F. Supp. 2d 966, 969 (C.D. Cal. 1999); c.f., Kasza v. Browner, 133 F.3d 1159,

8   1171 (9th Cir. 1998) ("courts do not disqualify an attorney on the grounds of conflict of

9   interest unless the former client moves for disqualification").  However, federal courts have

10  concluded that a non-client may move for disqualification "where the ethical breach so

11  infects the litigation in which disqualification is sought that it impacts the moving party's

12  interest in a just and lawful determination of her claims[.]"  Colyer, 50 F. Supp. 2d at 971-

13  72; In re Yarn Processing Patent Validity Litig., 530 F.2d 83, 88 (5th Cir. 1976)

14  (recognizing the possibility of non-client standing where the ethical violation is so

15  "manifest and glaring" or "open and obvious" that it "confront[s] the court with a plain

16  duty to act.").[4]

17  The Court rejects Plaintiffs' contention that Defendants lack standing.  In an action

18  under Title III of the LMDRA to dissolve a trusteeship, the union member or members

19  filing the suit do so *in a representative capacity on behalf of the local union*.  29 U.S.C.

20  § 464(a); Ross v. Hotel Emps. & Restaurant Emps. Int'l Union, 266 F.3d 236, 257 (3d Cir.

21  2001) ("Title III does not allow a private cause of action for individual damages ….  Relief

22  under § 304 must be sought on behalf of the local union organization and the entire

23

24      [4] Judges within the Northern District consistently have cited Colyer in adopting the
view that non-clients have standing to bring a motion for disqualification.  See Concat LP
25  v. Unilever, PLC, 350 F. Supp. 2d 796, 818 (N.D. Cal. 2004) (Illston, J.); U.S. Chess
Federation, Inc. v. Polgar, No. C 08-05126 MHP, 2009 WL 3334882, at *4 (N.D. Cal. Oct
26  14, 2009) (Patel, J.); Yee v. Capital Servs., No. C 05-3097 RS, 2006 WL 3050827, at *2
n.3 (N.D. Cal. Oct. 26, 2006); Canatella v. Stovitz, No. C 00-1105 JSW, 2004 WL
27  2648284, at *2 (N.D. Cal. Sept.13, 2004) (White, J.); Decaview Dist. Co., Inc. v. Decaview
Asia Corp., C 99-2555 MJJ, 2000 WL 1175583, at *4 (N.D. Cal. Aug. 14, 2000) (Jenkins,
28  J.).

SBA   Document 50   Filed 01/10/11   Page 7 of 9

membership must reap the benefits.")  In other words, the local union—here, the UHW—is the de facto plaintiff, and its interests must be considered where a motion to disqualify its counsel has been filed.  See Marketti v. Fitsimmons, 373 F. Supp. 637, 640 (W.D. Wis. 1974) (finding that Title III "places any complaining Local member in the shoes of the Local for purposes of a motion to disqualify.").  Here, Defendants Regan and Medina are being sued as Trustees of the UHW.  See Compl. ¶ 9.  As Trustees of the UHW, they have a direct interest in who is purporting to serve as legal counsel representing the interests of the UHW—the real party in interest.  Notably, Plaintiffs do not address this critical fact in their opposition.  Thus, the Court finds that Defendants have standing to seek the disqualification of Siegel & Yee.

### B.   CONFLICT OF INTEREST

Rule 3-310(c) of the California Rules Professional Responsibility provides, in pertinent part, that:  "A member shall not, without the informed written consent of each client:  [¶] (3) Represent a client in a matter and at the same time in a separate matter accept as a client a person or entity whose interest in the first matter is adverse to the client in the first matter."  "Rule 3-310 and conflict of interest rules are designed to 'assure the attorney's absolute and undivided loyalty and commitment to the client and the protection of client confidences.' …  Where an attorney concurrently represents clients with directly adverse interests, in the same or wholly unrelated matters, the duty of loyalty requires disqualification in all but few instances."  Sharp v. Next Entm't, Inc.  163 Cal.App.4th 410, 427 (2008) (quoting in part 1 Vapnek et al., Cal. Practice Guide: Professional Responsibility ¶ 4:4, at 4-3 (The Rutter Group 2007)).

In the instant case, Plaintiffs argue that Siegel & Yee is not representing conflicting interests on the theory that the interests of Plaintiffs in this case are aligned with those of the NUHW, as "[b]oth are engaged in efforts to put an end to what they consider to be an unlawful trusteeship and to restore democratic self-government."  Pls.' Opp'n at 10.  The Court disagrees.  The record confirms that Siegel & Yee has represented and continues to represent the NUHW, a rival of the UHW, in its ongoing efforts to replace the UHW as the

bargaining representative for tens of thousands of Kaiser workers.  Dickens Decl. ¶¶ 11-12.
In addition, Siegel & Yee currently are defending the NUHW and other former UHW
leaders in the <u>Roselli</u> action against claims brought against them by the UHW.  As such,
Plaintiffs cannot legitimately dispute Siegel & Yee is engaged in legal representations that
are adverse to the UHW.  Thus, by representing Plaintiffs—who stand in the shoes of the
UHW—in this action, while simultaneously representing rival union NUHW, Siegel & Yee
have contravened Rule 3-310(c) by simultaneously representing parties whose interests are
adverse.[5]

## IV.   **CONCLUSION**

Based on the foregoing, the Court finds that Defendants have standing to bring a
motion to disqualify Siegel & Yee as counsel for Plaintiffs, and that Siegel & Yee should
be disqualified for concurrently representing parties with adverse interests.  Accordingly,

IT IS HEREBY ORDERED THAT:

1.     Defendants' Motion to Disqualify Plaintiffs' Counsel is GRANTED.

2.     Plaintiffs shall have thirty (30) days from the date this Order is filed to retain
new counsel and for such counsel to file a notice of appearance in this action.  Siegel &
Yee shall continue to accept service for Plaintiffs until a notice of appearance has been filed
by newly-retained counsel.

3.     Plaintiffs' motion for preliminary injunction, which was prepared and filed by
Siegel & Yee, is DENIED without prejudice.  Should Plaintiffs' replacement counsel desire
to renew said motion, they may do so by renoticing the motion on the Court's civil
calendar.

---

[5] Plaintiffs also argue they waived any conflict by individually executing conflict
waivers permitting Siegel & Yee to represent them.  Pls.' Opp'n at 10.  However, Plaintiffs
neglect to cite any relevant legal authority to support the notion that a few union members
have the ability to waive a conflict of interest on behalf of their union.  Indeed, if that were
the rule, the proscriptions of Rule 3-310(c) would be rendered superfluous, since any union
member bringing a Title III action would unilaterally be able to waive a conflict of interest.

4.      The parties shall appear for a telephonic Case Management Conference on April 28, 2011 at 3:30 p.m.  The parties shall meet and confer prior to the conference and shall prepare a joint Case Management Conference Statement which shall be filed no later than ten (10) days prior to the Case Management Conference.  The statement shall comply with the Standing Order for All Judges of the Northern District of California and the Standing Order of this Court.  Plaintiffs shall be responsible for filing the statement as well as for arranging the conference call.  All parties shall be on the line and shall call (510) 637-3559 at the above indicated date and time.

5.      This Order terminates Docket Nos. 8 and 15.

IT IS SO ORDERED.

Dated:  January 4, 2011

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge